Morning, Your Honors. I am William Johnston. I represented Mr. Wilson and I also represented him in the Lummi Tribal Court and in the Whatcom County District Court on his criminal DUI. I should also note that I'm the attorney for the related cases, Candy, Washington, Jordan, Scott, and Susan Pearson, all of which have been dismissed now, are similar. This case, of course, is unique because, at least from our perspective, what took place here was a seizure off-reservation inside Bellingham. I'd like to briefly just go through a few points of fact which I think are relevant to the issue of exhaustion. The first is that on October 22, 2014, Mr. Wilson became intoxicated at the Lummi Casino. It was a stop. He became intoxicated, drove his truck on the Lummi Casino. It was stopped by Lummi officer Grant Ausick and determined to be under the influence. The State Patrol was called. Trooper Echeverria came to the scene because Mr. Wilson is not a member of the ER-69 is a notice of seizure form that was served upon Horton's Towing by Officer Gates the day after Mr. Wilson was arrested for DUI. He was taken to the county jail. When he was released, he went to Horton's Towing and the truck was gone because the truck had been seized and this notice had been given. Now, what's interesting from our perspective about this notice is the representation that the property was seized during the traffic stop for investigation and then it goes on. It says, after initially seizing the vehicle, Lummi Nation permitted the State Patrol to impound the vehicle. Then it states, the Nation is now, at the time they seized the vehicle, seizing the vehicle. Now, in ER-4546, you'll see Officer Ausick's police report and you won't see anything in that report relating to the contention that he seized the car forfeited on the night in question or that he gave consent to the State Trooper to take the car into Bellingham. He just simply took the marijuana to destroy it. This statement is inconsistent with what Officer Ausick did and testified in a pretrial hearing. He had nothing to do with any forfeiture. And we think that's important because when, to understand the case, when Mr. Ausick was subpoenaed to attend the District Court criminal trial as a witness, to be cross-examined on this, the Lummi Nation quashed the subpoenas by asserting their sovereignty, which is the explanation for the dismissal of Mr. Wilson's DUI. So we never really know the full background as to how it came to pass that these representations were stated in this written notice of seizure form, but one could speculate that the tribal deputies were attempting to create some sort of long-arm jurisdiction. So with that statement, we perceive the issue to be, in this case, what was not tribes have inherent authority to confiscate and forfeit cars, but more importantly, even if they do, do they have the power to go into the State of Washington to seize property? And we think they clearly do not if that issue is addressed. We also feel that the issue of whether the tribes have this civil power to bring a civil suit against the property of a non-tribal member is controlled also by straight VA-1 contractors, in which case the Supreme Court held that exhaustion was not required to the tribal court to determine whether they had jurisdiction to maintain civil jurisdiction over an accident on a road inside a reservation. Are you saying that's an absolute rule? No, I say that this is a, although we believe that a forfeiture action is more properly characterized as a quasi-criminal action because its purpose is to punish the person, and therefore it's controlled by the Oliphant case, it's just one step over. It was denominated by Judge Kuenhauer as a civil case, and if that's true, a straight was also a contention by highway inside an Indian reservation, and we think the principle fits. There is no state tribal jurisdiction over non-tribal members for actions that take place on highways inside Indian reservations. Can I ask you just a factual question about where the wrongdoing took place? Your complaint, I think, concedes that your client first went to the casino and was drinking there, and I assume he drove the same truck that ultimately was stopped on the state highway, right? And so I assume also, or at least it's reasonable to infer, that the marijuana was already in the truck when he parked it at the casino, right? He didn't just acquire it between the time he left the casino and the time he got onto the state highway, right? I don't know. Okay. Well, I'm just saying it's a fair inference from the complaint that you drafted that the marijuana was in his truck on the reservation, not on some state highway, on the reservation land, and that he transported it from that point to the state highway, and that, it seems to me, triggers the luminations, whatever that provision is. I don't remember the specifics, right? But it's like transporting some illegal substance on our reservation. And so I guess I don't see this as being controlled by STRAIT at all. This is not something, this is not just one of those cases where someone's just driving through, happens to be driving through an Indian reservation. It seems to me your client committed misconduct on the reservation land, and that's what triggered the nation's authority to seize the truck. Well, I think to decide a case on that basis is speculative. He may not have ever left the state road. We don't know where he parked in the Lummi Casino. So to decide the case on that basis I don't think would be appropriate. But the question really is whether or not another case I think that controls is the Teneco oil case. And I think I've argued this, no one's addressed it, but it's very similar. Mr. Wilson's entire fortune was in that truck. That was all of his property. It was summarily seized by a Lummi ordinance that said the Indian tribe in the Teneco oil case passed an ordinance that invalidated the property right of the Teneco company. Jurisdiction lied in the federal court in the Teneco case. And I think where the issue is clear cut, and I've cited the A1 case, but it seems to me that there is no authority for tribes to assert this sort of jurisdiction over non-tribal people. Well, you may ultimately prove, you may be proved correct on that. But I guess the issue it seems to me for us is just whether the tribe has a colorable claim to jurisdiction. And it seems to me it's colorable, it's not crazy. At least under the factual scenario that I've seen. I would go back to the point that I made in opening, that the Lummi Nation on the facts that are in this record misrepresented the basis upon which they sought to forfeit this car. They said that they seized it on a roadway in the Lummi Nation, and that is not the truth. We think that's bad faith under the exhaustion factor. And for that reason, the court should throw out this claim that they should go back to the Lummi Tribal Court. I neglected to mention that with respect to the claim against Hortons, we don't think that exhaustion has anything to do with that. The question there is whether or not Hortons gave the car away inside Washington, and it occurred in Washington, they're subject to Washington jurisdiction. We think that sending back Hortons' case to the Lummi Tribal Court violates Washington's sovereignty. They have jurisdiction of the parties, they're capable of making this ruling. So that's... Counsel, you seem to place great emphasis on the Strait case. And as I read that case, the Supreme Court there made a number of findings as to how much control the Indian tribe had over the road. And here we have someone stopping at the casino, marijuana and so forth, and getting on that road. If there were no other grounds for affirmance, wouldn't we at least have to remand for the district court to consider the factual, the actual facts in this case? Well, with respect to my analysis as to whether Indian tribes can take property owned by non-tribal members, I got in trouble with this before the district court. But the Miners Electric case, the district court case that was overturned by the Tenth Circuit on sovereignty grounds, is the most scholarly analysis of the question. And that's our position on the most on-point analysis as to whether the tribes possess this power. I excited Strait because Strait, to way of my reading, announced that on a state road there's no jurisdiction. But there in lies the analysis. Our belief is that it's controlled by Oliphant, because this is really a desire to punish it. So that's our position. Another question. If dismissal was proper, it was with prejudice. If there is to be dismissal, should it have been without prejudice, and why? Well, first, there's two questions. And I haven't really talked about the United States' substitution. But there's really two questions here. We're suing Hortons, as I mentioned, simply because they committed a tort inside Washington. I don't think they can be pulled into the tribal court. And I don't think Hortons can assert the defense. Smith Plumbing is the case on point in another Ninth Circuit case. The Indian jurisdiction immunity defense is not available to Hortons. So Hortons, we think you should grant summary judgment on, because we ask you to review the merits of Hortons' claims that this was legal justification. I know Hortons has abandoned that now. But that's how we see that case should be handled. As far as the government's case, the question there is whether or not they, we believe that the Shirk case is the case that controls that a requirement for a tribal officer to be a federal employee is that they must carry out the compact. There is no case that authorizes an Indian tribe to go off reservation. In our state, Washington, the Erickson case says the jurisdiction stops at the border, not in the city of Bellingham. So we can't perceive how the compact would endorse the government to approve the tribes doing this action, number one, in terms of forfeiture, and number two, expanding their power to go into the state. That clearly is beyond any case that I've read. In our state, state versus Erickson, 172 Washington Second, 506 is the law, along with Settler versus Lemire. So if they would have seized the car on the tribal land and not had it towed, that would solve that issue? No, we don't believe that, for our position is that tribes do not have this authority. On tribal land, on state highways, off the reservation? What about Montana's second exception, which says that even when the conduct occurred off tribal land, the tribe might still have jurisdiction. If the conduct impacts the political integrity, you can make an argument, and that's why maybe there's plausible jurisdiction, because we don't have a fully developed record. The economic security, this is a seizure, or the health and welfare of the tribe. So shouldn't we defer, at first instance, under comedy grounds to the tribe to allow them to fully develop the record on that issue? They might decline jurisdiction, they might not, but at least the record will be fully developed. I don't think so, because I think that there is no basis, there is no Montana's second exception case, and I'm going to reserve, after this whatever little time I have left, but there is no case, and the only case that exists with respect to forfeiture is the Miner Electric case, and it's of note in that case that they invited Mr. Miner to come back on the reservation. What does this language mean, then? The conduct impacts the political integrity, the economic security, or the health and welfare of the tribe? That was considered in Montana, as well as in Strait, and the court found in those cases the State of Washington is perfectly able to forfeit cars on State highways in the reservation, and there is a remedy there. So our position is what it is. I might note that even though we've lost all these cases, the Department of Licensing no longer honors these orders. So the reality of the so-called tribal forfeiture, it's in the record of the Candy Washington case, which is mentioned. But anyway, that's our position. I'd reserve whatever time I have left. Yes. Okay. Thank you. Let's hear from, I guess, you all are going to split the time? Okay. You'll take how much of the time, half and half, or ten and five? Ten and five, unless the court is done with our interests and wants to speak to Horton Court. I'm Teal Miller on behalf of the United States. The issue before the court with respect to the United States in this case is quite narrow. It's the question whether the Attorney General's certification that Officer Gates was acting within the scope of his employment in carrying out the compact was correctly accepted by the district court. And we think that the answer to that question is a simple yes because of two reasons. The scope of employment component of it hasn't been challenged on appeal, so the question is, was he carrying out the compact? And the answer to that question, the Shirk case makes clear, is, was this the type of duty that a tribal officer would have under the compact? And the answer to that question is yes, because his actions were authorized by tribal law. Well, I thought the extent of the compact went to law enforcement activities? And so why, I don't know, I understand if you were arresting somebody for a criminal offense, but why does civil forfeiture fall within law enforcement? It falls within law enforcement because it was a civil forfeiture for a criminal offense or it was a criminal offense over which the tribe didn't have jurisdiction, but it was the tribe's interest in it was a law enforcement interest in keeping marijuana, which is an interest in keeping marijuana. And so the report makes clear that the plaintiff was at the casino, and although this isn't in the record, both the casino and its parking lot are tribal trust land. Does the compact mention law enforcement? It doesn't. The only relevant Okay, so if it doesn't, what about the multiyear funding agreement, which does expressly contemplate law enforcement? Isn't that sufficient? It is sufficient. The multiyear funding agreement says one of the programs that the tribe is taking over is law enforcement. Now, if you compare the multiyear funding agreement and the compact in this case to that in Shirk, you'll see that in Shirk the compact was actually more complicated and it had four separate law enforcement duties that the officers took over and other duties were not part of the compact. In this case, all law enforcement a tribal officer does is within the compact. And that's why the scope of certification But I'm still confused. Is it expressly stated that law enforcement functions are in the compact? The multiyear funding agreement says one of the programs the tribe is taking over is law enforcement. And then the compact, at page two of the compact, says the duly enacted laws of the tribe shall be applied in the execution of this contract. I see. So you believe that that incorporates the multiagreement? That they work together and incorporate the tribal officer was carrying out the tribal ordinances that the court has referred to in serving this notice of seizure. Was that a yes? Yes. Okay. Yes, Your Honor. Your position is that anything a tribal officer does constitutes law enforcement, no matter how disconnected? That's what I'm trying to imagine. That's sort of a sweeping statement. And that's If it's within the scope of his employment, yes. And I think the way to think about this is the example that the court gave in the Shirk case about an auto mechanic who is working both within the compact and servicing fleet vehicles that are funded through the compact and are compact vehicles and also servicing tribal vehicles that aren't part of the compact. And it says the way to answer the question about whether the officer was carrying out the compact was to ask, was this a fleet vehicle? And effectively, the fact that he might have done it defectively or negligently isn't part of the analysis of whether he's carrying out the compact. The question is, would a Bureau of Indian Affairs officer fulfilling that duty have been covered by the Federal Tort Claims Act? And here, the tribal officers have taken over the role that was formerly held by Bureau of Indian Affairs officers on tribal land. And they're carrying out and enforcing the ordinance of the tribe. And he was doing that. And so I acknowledge that it's theoretically possible to imagine a tribal officer who was doing something that wasn't law enforcement. But here, this is within the scope of law enforcement. I guess, even if you think that that's questionable, once the Attorney General certifies, as we did in this case, and of course, this case is distinct from SSHRC because in that case, the Attorney General didn't certify. And so there wasn't a prima facie evidence that this was within the scope of employment and carrying out the compact. And here, there is that prima facie evidence. Once we do that, there has to be something more than speculation that the officer wasn't acting within his, wasn't carrying out the compact. And here, there isn't anything in the record beyond speculation that I don't think the United States would have authorized the tribe or wanted the tribe to do this. The particular action that this officer has been sued for, I mean, he was basically acting like a process server, right? I mean, the tribe could have hired anyone to go do that. It's not like, that's what I'm saying. It's just not something unique to, well, only a police officer could have done that. So of course, it must be deemed law enforcement. He's just being, right? The base for his liability is here. Here's this, Horton's telling, here's this piece of paper. Well, he also prepared the notice of seizure, which I think is part of a law enforcement duty. And I think that when you're looking at scope of employment questions under the Federal Court Claims Act, you have that respondeat superior test, which is, is this part of what, was this in service of his master? And here, it clearly was. It clearly was tribal ordinance. And there isn't anyone else within the tribal government who would have taken this function that you would say, oh, no, this is naturally more a different kind of function that isn't covered by the compact. If the court has no further questions for me, I'll reserve them right near the time we ask the judgment. Let me just ask the question. If the dismissal was proper, should it have been with prejudice? With respect to the United States, yes, because the basis of the dismissal was that he failed to exhaust his remedies by filing an administrative claim under the Federal Torts Claim Act, and that was the basis for the dismissal. And that, that component of the dismissal has not been challenged. Well, but he could now still attempt to exhaust, couldn't he? Well, we substituted in 2015, and more than three years have passed since then, and he hasn't filed a notice of administrative claim that I'm aware of. But that can be raised later. So dismissal without prejudice just keeps the doors open for further proceedings and argument down the road, it seems. Well, I don't, he hasn't challenged that component of the dismissal so far as I'm aware in his briefing, but I don't, it is true that the exhaustion requirement is subject to equitable tolling, but I don't think that there would be a basis for equitable tolling when three years have passed here. We would have to perhaps speculate on that issue. Well, again, it, it, it isn't a claim he's preserved so far as I know, Your Honor. Okay. Thank you. Let's hear from your co-counsel. May it please the Court, my name is Robert Novasky. I represent Horton's Towing. First of all, let me clarify that contrary to what the appellant has argued, Horton's has not abandoned Excuse me, counsel, would you speak into the microphone so the people in the back of the room can hear you? Thank you, Your Honor. Horton's has not abandoned any of its merits arguments. The posture of the case now before the Court is that the district court dismissed this case without regard to the merits on the issue of exhaustion. And so the argument that Horton's has somehow forfeited its right to assert the merits at some later date is not correct. Secondly, the Court had asked us to be prepared to address the Montana exceptions. I think that the first exception is not applicable in this case because of the circumstances. The second exception, as Judge Pergerson has indicated, may apply from the standpoint that you have an individual who is a non-Indian who has gone on to Indian property and has committed a crime on Indian property. And so, I can get into that further if the Court wants to, but for purposes of Horton's position in front of the Court, that really isn't an issue because, again, what we're dealing with is the issue of exhaustion. And the district court correctly dismissed with prejudice because what was offered to the Court in summary judgment was whether or not the case was appropriate for dismissal in its posture. It did not bar the appellant from pursuing an action in tribal court by dismissing with prejudice because if the tribal court ruled that it had jurisdiction and the appellant didn't agree with that ruling, then the challenge would still be available to go to the Federal court and challenge the jurisdiction of the tribal court. But there's some law, just harkening back, that to me indicates that when you dismiss something with prejudice, that it can be construed as being on the merits. And I'm pulling some things back from my memory, but that's a concern. I don't know if that issue has been fully developed, that's all. It hasn't, and I think it is a concern, but for purposes of addressing Judge Nelson's question about whether or not the dismissal with prejudice was proper or not, I don't think that the dismissal forecloses the appellant from bringing the issue back before the district court on whether or not the tribal court had jurisdiction to make a decision. But there is a concern, and I recognize that. But with regard to the exhaustion issue, the problem is, and Judge Kuhnhauer got it right when he indicated in his ruling, that this is a civil ordinance having to do with forfeiture. And the cases are clear. The Marceau case that Judge Kuhnhauer cited, the National Farmers Union case, the Window Rock case, all of those cases indicate that when it has to do with a civil matter in the tribal court, under the principles of comity, the Federal court is required to allow the issue first and develop the record. And then, if there is a challenge to what the tribal court decides, it's proper for the Federal court to then make an analysis. And in this case, that didn't happen. In each of those cases that have been referenced, it was an issue where it had gone before the tribal court and there was a question about the tribal court's jurisdiction. This case never went before the tribal court for determination of whether or not the tribal court had the jurisdiction on a civil forfeiture ordinance to seize the vehicle. And so, the judge correctly indicated that the plaintiff in that case had not exhausted his remedies, he had not gone to the tribal court, and therefore, the matter was not properly before the district court. And so, the judge properly dismissed on summary judgment. I would also point out that the Oliphant case that is cited by the appellant has to do with a criminal issue, not a civil issue. And in fact, even there, in subsequent cases, particularly in the Marceau case and the Window Rock case, the courts indicated that in a criminal context, there is a strict construction, but this is not a criminal issue, it's a civil issue. Now the problem here is with regard to Horton's, the argument is that Horton's converted the appellant's property. One of the elements is legal justification. So if Horton's had no legal justification, then it was, it could be held guilty of conversion. The problem in this case is this. Civil Rule 82.5 indicates that state courts will recognize a tribal order or tribal ordinance if it's a proper ordinance. And so, what's happened is, the appellant is arguing that Horton's should have just said, no, we're not going to honor this notice of seizure. But Horton's really cannot be put in that position, because Horton's is presented with a notice from a, purported to be from a tribal court, that says, we want to seize the vehicle that was impounded after it was taken off of tribal land. And Horton's is not in a position to make a legal analysis of jurisdiction. If the, let's say that the state court recognized the forfeiture as a proper civil procedure in tribal law, that would be legal justification. What the appellant wants this court to do is say that Horton's has some legal duty to make that analysis of jurisdiction. And the state law indicates that Horton's does not have that obligation or that duty. And so, Horton's would be in a rather impossible position if the court were to say, well, Horton's could have said no, should have said no, and should have challenged legally the notice of seizure. And so, we have this connection between, potential connection between tribal law and state law. And if the state law recognized the tribal ordinance and the notice of seizure, then Horton's had legal justification. So again, we're back to the same issue with regard to the U.S. District Court. The remedies were not exhausted, and so the summary judgment was proper. Thank you. Thank you, counsel. Counsel, you have a little bit of time left for rebuttal. A couple of brief remarks. First, I note that Horton's doesn't mention Smith Plumbing v. Aetna Casualty and White Mountain Apache v. Smith Plumbing. They have no standing to assert Indian sovereignty. So that's our position on that. Those cases are on point. The other thing is, this is a tort that took place in Washington between Horton's and Mr. Wilson, both non-Indians. Washington sovereignty is offended if that case goes back to tribal court. That's our position. The last thing I'd like to say is, if the court overturns the certification of the United And as the court knows, with Lewis v. Clark just being decided last year, sovereignty is not implicated in a lawsuit for money damages against a person in their individual capacity. So that would provide a basis for state jurisdiction, we believe. So thank you very much, Your Honors. Okay. All right. Thank you, counsel.
judges: D.W. Nelson, Watford, Pregerson